5. Ida Morales v. Bruce Chadbourne et al. May it please the Court, Aaron Goldsmith on behalf of Agent Donaghy, I'd like to request two minutes for rebuttal, Your Honor. Yes. The issue in this appeal is whether the individual federal defendants are entitled to qualified immunity as a matter of law in the absence of clearly established law. There was no clearly established law in 2009 as to the issuance of immigration detainers based on a name search of government databases. There was no clearly established law as to whether the results of such a search constitute probable cause or even whether probable cause was required under the unique circumstances of an arrestee in state custody. And in fact, in Parks, a district court surveyed the law of this circuit within the particular context of a name search of a government database. And that case also involved a woman who was married and who changed her name as a result of her marriage and found that although that district court judge was troubled by the search, there was no clearly established law. If that's true, why does Agent Donaghy himself invoke probable cause as the justification for securing the detainer? In an affidavit submitted to the district court, he specifically invokes probable cause, says that he has probable cause for lodging the detainer. If that's not the relevant standard, why does he invoke it? Because, Your Honor, first of all, let me say that it's an objective standard, so what he subjectively thought or didn't think is not the issue. The issue is what a reasonable person standing in his shoes would rule. The reason he said that is because there was such focus on the issue of probable cause. Our argument is it wasn't clearly established probable cause was required, but if probable cause was required, he at least arguably had probable cause based on the name search. Could you just go to the first point, that there's no probable cause required? What's the reason to think that that wasn't clear, that holding somebody in detention for a day wasn't clear, that you need probable cause before you can do that? And if you don't need probable cause, what could one have thought you needed? Yes, Your Honor. Obviously, there's case law in other contexts saying that probable cause is required to detain somebody. So when you say other contexts, what do you mean? In the context of traffic stops, for example. But this is involving... And immigration detention would be one of the other contexts, right? In certain types, yes. But this is involving an individual already in state custody. And why should that matter for purposes of whether probable cause would be required? Because by hypothesis, it only will trigger when they're not in custody. Or at least in this case, we've got a case where she would be released, right? Correct. Because there's a geographic distance between the federal facility, immigration facility, and the state facility. And a reasonable officer could have thought in 2009 that there would be some opportunity to travel that geographic distance to speak with the person before the person... No, I understand. But just I guess what I'm trying to figure out, suppose they hadn't figured out whether rightly or wrongly that they believed she was in the country illegally until five seconds after she's released from prison. If they want to take her into custody right at that moment, they're waiting right at the courthouse steps. Do they need probable cause to hold her for a day? Is there any argument they don't? I don't... I understand that's not this case. That's why I'm asking about it, though. No, no. I mean, the argument is it's different when someone is being held because they're dealing with the transfer between two sovereigns. Why? That's what I don't understand. The only way this kicks in and has effect, the detainer, is if she's going to be released. If at the moment of release, to hold her for a day you would need probable cause, why don't you need probable cause to have the state hold her for you for a day? I just don't know. What would be the argument? The part of the answer is at the time he issued the detainer, he didn't know that she would be detained at any period of time beyond what she would otherwise be released. But they wouldn't need the detainer. The only reason to issue the detainer is to hold her if she's going to be released, right? Well, it's to notify the state authority. And give them the authority to hold her when their own law won't allow her to be held, correct? Well, it's also just to notify. I mean, it's not simply... We wouldn't issue the detainer to notify. The detainer doesn't want to notify. You could call them. The detainer doesn't want to notify. The detainer enables them to hold the person after she otherwise would be released, correct? Yes. Okay, so I guess what is the argument by the government that holding somebody post-release for a day under any of the precedents is not clearly something you need probable cause for? Is there any case that suggests that? There's no case. I'd consider there's no case directly on point. I would point out the Ortega case from the Sixth Circuit dealing with it. There was no probable cause for a detainer involving a transfer of an individual from home confinement to jail, to state prison. Although that case is distinguishable because that case involved one sovereign. Here it involves two sovereigns. And whether the period was 24 hours or not, all I would say is that a reasonable officer could have thought there was some period of time, whether it was 15 minutes, whether it was more than 15 minutes. People can disagree, but it was not clearly established that there was no grace period to physically get from the federal facility to the state facility. Counsel, you keep talking about in your brief, use the phrase the difficult and unique circumstances that would justify something less than probable cause. What are those difficult and unique circumstances? It seems to me you have someone who's already in custody, could easily be interviewed, an inquiry could be made, perhaps to support a probable cause determination. So I certainly don't understand the difficulty that you're referring to. What is the difficulty? The difficulty is that the federal facilities are not geographically located at the same place as the state facilities, and so there is an argument at least, whether you agree with it or not, that there would be some period of time to travel to speak with the person before they were released. Now, but doesn't that just suggest that you're contemplating a prolonged transfer as opposed to a very short one? That's what's difficult about it, is that there might be a lot of time that would be needed, enough time that she could get away. But of course, that suggests all the more reason for probable cause, doesn't it? Because you're contemplating what is potentially a prolonged detention to affect the transfer, as opposed to a very short one. If it was a very short one, there's no difficulty. Well, it would be if there was no opportunity at all to travel, and I would add that this Court has said in other contexts in Castaneda that for certain types of aliens, the government's actually required to take the person into detention immediately upon their release. Again, that's not the subject here. All I'm saying is that there was an argument that could be made whether or not it was the wise course of action. The argument could be made. And moreover, in the context of this particular case, if probable cause was required. Before you get to that. Sure. I'm having trouble with something I read in the other side's brief that suggested that there were policy manuals, some sort of guidance, published guidance that goes back actually many years, suggesting that in circumstances not unlike this, the probable cause is the standard. And so I'm trying to put myself in the place of the reasonable officer who probably isn't, maybe he or she is, but probably isn't reading Supreme Court cases and all the circuit cases and trying to determine what the standard is, but in fact is going to go to the policy manuals, or is going to rely on training. And I take it that the only evidence in the record is that the department's own policy is that probable cause is required. So I have to say I'm a little confused about why there would be an argument made today that it would have been unclear to a reasonable officer at the time. If I may just have a few seconds. You can have as much time as you want. What the Supreme Court said in Al-Kid was, in looking whether or not the law was clearly established, you look to see whether it was controlling authority or a robust consensus of persuasive authority. And that's not what we have here, and it's an objective... Yeah, but the point of that is to protect all but the most incompetent officer. And the definition of an incompetent officer is one who disregards the training that he's received. And the training here is you must have probable cause. So it's not the legal standard I'm so much concerned about, although I am. What I'm concerned about is why is the government taking this position? Well, first of all, I don't represent the government. I represent Agent Donaghy. Well, that's actually a pretty good answer. Well, if it's a good answer, then I'll just rest on it. The law was not clearly established. Agent Donaghy was entitled to qualified immunity. Thank you. Good morning. May it please the Court. Max Weintraub representing Field Office Director Bruce Chadburn and Resident Agent in Charge David Riccio. Additionally, I represent the United States in this matter, but not before this Court here. Ms. Morales' claims... Oh, and if I could reserve one minute, if I could. Yes. Apologize. Ms. Morales' claims that Supervisors Chadburn and Riccio either placed procedures in place or established training that didn't suffice, that caused a violation of her constitutional rights. That simply doesn't suffice to climb the hurdle that they had any actual or constructive knowledge that doing so would necessarily violate her rights. As this Court found... Can I just clarify your position on that? So is the position that the policy they did adopt could have  Yes, Your Honor. How could that be? Because I understand the argument that if there was a clearly established requirement for probable cause, just assume that for a second. And if the policy they had in place required probable cause, they might have an argument that they couldn't have anticipated that an officer on the line wouldn't have looked for probable cause in any particular case. But the way this case comes to us, it seems like your argument is even though the National Office seemed to have a probable cause requirement, you're willing to have us decide the case on the assumption that locally your clients as Supervisors could have been responsible for a policy that specifically did not require probable cause. And in that instance, if somebody operating under that policy does a search that doesn't require, doesn't turn up probable cause, I don't see why the author of the policy wouldn't really be on the hook for it. Your Honor, if I may, I don't believe that the national policy was requiring probable cause. The regulation in place then said that, did not use probable cause, but used reasonable leave as the standard to issue. But I thought all the cases seemed to suggest that reasonably reasonable cause. Later cases do, but Your Honor, there's still litigation going on today over whether probable cause is necessary. That very fact suggests that it's an issue that couldn't have been known to a reasonable officer. What do you mean there's litigation going on today? Where? Well, Gonzales in the Ninth Circuit, in L.A. What context is that? The specific question is whether, it's a class action essentially on whether probable cause is necessary to issue an immigration detainer. In a qualified immunity context? Is there litigation about whether probable cause itself? That's what that case is about. And in fact, I'm working with Ms. Tormo, so we're fairly familiar with this issue. I thought the government had taken a position a couple of years ago in a case that it is required. Well, that's not the case, or at least it's not the case nationwide. It may have been the case in a specific instance. But the other issue that, I apologize, but so I don't believe that that's the national position. And I don't believe that's the national position because we represent and we're told, we've been told over and over again that that's not their position. In addition, there was a question about whether, this relates specifically to issuing. On this point, is the idea then that your clients as supervisors were not designing any policy of their own? Absolutely. They were just applying whatever the nationwide policies, despite what the manuals may have said. Right. And so there was not deliberate indifference, as this court has defined it, which could only arise if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights. Counsel, there are allegations that what happened to the appellee here happened on a, it happened to her once before. There are indications in the record from immigration attorneys that what happened to her has happened to others. She was specifically told it could happen to her again. The point is, there's evidence here of a repeated pattern of disregarding the probable cause standard, if that's the applicable standard, and that suggests deliberate indifference by those in authority to insist that their field officers comply with the applicable standard. If I may, Your Honor, while that may get to the FTCA claim that also exists in this case, whether the government was acting inappropriately, these agents, in doing their job and following the instructions that were given them, in acting as any other ICE agent or any other ICE field office director, or in this case, or any other resident agent in charge, they are exempt because they are immune, because they weren't acting as rebels or rogues or as other officers. They were acting exactly as those people in those positions in other field offices around the country would have been acting and would have been expected to be acting in 2009. The issue, and I know I'm out of time, the issue I was trying to get to quickly, though, was that this, the point is that the issuance of the ICE detainer, by the way, where the ICE agent doesn't know necessarily what's going to happen. The ICE agent doesn't know that that's going to result in detention beyond, because for one thing, it's been determined time and again that a detainer's request is not a requirement, and we've seen subsequent to these cases, time and again, jurisdiction after jurisdiction after jurisdiction, and if they have the ability not to honor them, then an ICE agent in issuing it doesn't have the ability to know that it would result in detention beyond. The whole purpose of it is to assure detention. I don't understand that argument at all. That's why they, I mean, I guess another jurisdiction can disregard it. That's always a possibility, but the sole reason to issue it is to assure detention for an additional 48 hours, so additional investigation. Well, up to an additional 48 hours, and in the interim, an agent could go and interview, and I know that's not in the record yet, but the plan, I believe, is for someone to interview before that custody takes place. In this case, the detainer was issued at 8.32 in the morning, and at 4.32, they were notified, hey, she's about to get out. They just couldn't get her that day. What I don't understand, the typical case of supervisory liability where there are reasons to be concerned about imposing qualified immunity is that the supervisor implements a policy which is itself lawful, and then the application of it by the line officer turns out to be unlawful, and there's enormous hesitancy of saying that the supervisor is responsible for that, right? But this is an odd case because you're presenting it to us as if we're supposed to decide there's no supervisor liability even though the policy they were in charge of and overseeing the line officer's application of may not have met the legal standard itself because there was no requirement for probable cause being directed to the line officer. But they couldn't have known that at the time, Your Honor. In 2009, they couldn't have known that. The regulation says... No, I understand. That's if probable cause is not the applicable standard. I understand. If it's clearly established, if we were to find it's clearly established that probable cause is the applicable standard, then I'm having a hard time seeing why there wouldn't be, at least on a 12B-6, you know, the motion to dismiss, why the supervisor isn't liable for the conduct under a policy which does not meet the legal standard. Well, the response is in Hagerty and Phoebus Rodriguez, Your Honor, where if they're acting, unless they're acting in a way that no other reasonable official would have acted... But that's just... Again, just so I understand your argument. I understand if probable cause is not clearly established as the requirement. But just bear with me for a second. Assume we disagreed with you on that and we thought probable cause was clearly established at the time. What is the case for there being no supervisory liability when the supervisors here would be implementing a policy that violates... would be having set up a policy to be followed by the line officers that was in violation of clearly established law? Only that the supervisors don't establish that policy. That's a nationwide policy. It would come from HQ. They're implementing nationwide policy within their field office. And unless they are made to know otherwise, they ought to be following that procedure. That's law enforcement 101, I believe, military as well. Sounds like you're introducing a lot of factual questions that were not supposed to be resolved. I'm simply trying to... I understand that. But I think it does suggest that the exposure of your clients to liability may hinge upon discovery that has not even been undertaken yet. Only if your honors find that in May of 2009, it was clearly established and that... Suppose we did find that. Would it then be a factual question? It may very well be, your honor. I'm not in a position to say that now. Thank you, your honors. Good morning. May it please the court. Catherine DeSormo for the plaintiff appellee, Ada Morales. Just to pick up on Judge Lopez's note that much of defendants arguments depend upon factual allegations that they're attempting to insert into the legal questions as they frame them here. I think that's a key point in this case. There's been no discovery whatsoever. Defendants Chad Bernamucci, of course, brought only a 12B6 motion, but Defendant Donahue moved for summary judgment based on two declarations that he submitted in support. Those declarations are completely about facts in his possession. We've had no chance for discovery whatsoever. And we moved for a chance to conduct discovery under Rule 12, under Rule 56D. And Rule 56D says that when a non-movement needs discovery in order to oppose a summary judgment motion, that discovery should be granted. And the district court may either, Rule 56D1 provides a rule, the district court may either defer considering the motion or deny it. And here, as to Agent Donahue, the district court denied it. That was completely correct. It would have been unprecedented to do otherwise. Counsel, as to the legal question we have been discussing as to whether the applicable standard for the issuance of a detainer such as this is probable cause. I mean, that is a pure legal issue. And if we were to decide that against you, all the officers here would be entitled to qualified immunity. Is that not the case? If the court did find that probable cause was not required, it was not clearly established in 2009 that probable cause wasn't required to hold someone in jail for 24 hours to investigate their citizenship, then yes, that's right. That is a pure question of law. There's no discovery needed for that. I submit, Your Honors, that the question that you're asking... Just to be clear, you're saying it's right that that's a pure question of law and not that if we said reasonable suspicion or some other standard was the applicable standard that you'd necessarily lose? No, that's right, Your Honor. Okay. But the question of whether probable cause was the standard in 2009, of course it was. In 1975, the U.S. Supreme Court held in Brignone-Ponce v. United States that the Fourth Amendment applies to all seizures of the person, including immigration seizures. Brignone-Ponce was an immigration case. The immigration officials in that case were asserting the authority to perform a warrantless stop of a vehicle under 8 U.S.C. 1357a1 and a3. Here, we're dealing with the same statute. That's the warrantless arrest statute. And defendants have noted 1357a1, a2, and d are their sources of authority. But in any event, we're talking about a warrantless arrest for immigration purposes. Brignone-Ponce speaks directly to that. And Brignone-Ponce says, for a limited traffic stop, like a Terry stop, what's needed is reasonable suspicion, articulable, individualized, reasonable suspicion. Apparent Mexican ancestry is not sufficient to create reasonable suspicion. But Brignone-Ponce goes on to say, for any further detention or search, probable cause or consent is required. So that's been clear for decades. And as the Court noted earlier, Jettard, I think, noted there's a 1993 policy issued by INS, ISIS's predecessor agency, saying a detainer causes an arrest that must be based on probable cause. Even further back in 1985, in the Fifth Circuit in Cervantes v. Whitefield, the INS stipulated that an immigration detainer causes an arrest, it must be supported by probable cause. Now, my colleague, Mr. Goldsmith, noted that the difference they think here that unsettles the law is that this involves a transfer between two sovereigns. That is a distinction without a difference. The detainer asks for detention. It asks for up to 48 hours, plus weekends and holidays, of detention after the person's state custody would otherwise end. And in this Court, Irady v. Gunter, in 1976, this Court held that a transfer between two sovereigns in the extradition context requires a Fourth Amendment justification for that extradition. So in Irady v. Gunter, the individual was serving a Massachusetts sentence. There was a governor's warrant from Florida asking him to be extradited to Florida to stand trial for charges that were pending there. And the Court granted habeas because the Florida extradition warrant was not based on probable cause. So any time a person is in custody for one reason, that reason expires, and the person is transferred into a new period of custody for a different purpose, a new Fourth Amendment justification is required. That's clear, too, from Illinois v. Cabayas, the Supreme Court case, of course. Here, Ms. Morales was ordered released by a state judge on her own recognizance, but she was recommitted to Rhode Island Department of Corrections, strip-searched, and put in a jail cell for 24 hours. There is no question that probable cause is required. Could you explain how the detainer operates as a legal matter in the following respect? Does the detainer provide federal authority for the detention that otherwise would be lacking in the absence of it, even though the detainer only takes effect if the state voluntarily chooses to give it effect? Is that how it works, so that basically the detention is federal custody under federal law during this transfer period? Is that right? That's right. There are habeas cases that get to this question that go both ways. Some habeas cases view the state officials as the custodian. Some view the federal officials as the custodian. Do we have to view the federal officials as the custodian for this to be the right people to be suing? Because I guess one thing counsel was suggesting was this just a request. Any custody that occurs is then by the state pursuant to their own authority. So I guess I'm just trying to figure out what exactly makes this other than a request by the federal officials but actually an arrest that the federal officials are responsible for. As opposed to just say a phone call we'd like you to hold them. Presumably if DHS calls up Rhode Island and says we'd like you to hold them for 48 hours and they do it wasn't a nice phone call to make but that doesn't mean they're responsible for the arrest. The detainer, your briefing suggests, is different. I'm trying to figure out why. Right, that's right, Your Honor. Well the detainer purports to provide legal authority for the detention that would otherwise be lacking. So if you look at the text of the detainer it says maintain custody of the alien for 48 hours plus. So even if the state's the custodian the only source of detention authority comes from federal law which is in the form of the detainer. That's right, and in fact in the district court the United States in the official capacity submitted a brief it was a one or two page brief to the district court about this precise question it was in aid of the state defendant in that case below who's not on appeal here of course and the United States said the detainer provides the authority for detention the state official doesn't have to look the detention lawful. So what the United States is effectively doing what ICE is doing is asking for detention by state officials that would otherwise not be legal and purporting to provide the authority for that detention. So certainly the federal officials would need to answer for it. This is just like a case, you know there are lots of fellow officer cases for example where one jurisdiction calls another and says please make an arrest for us and in that case the requesting jurisdiction has to have probable cause for the arrest to be lawful. In the probable cause determination part of the district court's judgment, as I read it, assuming probable cause is the applicable standard as a matter of fully established law his only argument for why it was lacking seems to be unless I'm missing something, a reference to the detainer the detainer's facial language itself which doesn't reference probable cause. That strikes me as not very much of an argument that probable cause was lacking and that's the only reason he gives. What should we do in that context? Well I think first of all the court can affirm on any basis supported by the record. The district court did zero in on language on the face of the detainer form and I think that was partly because the district court was deciding qualified immunity as well as the underlying was there a violation? And the fact that the face of the detainer form said please detain this person for the initiation of an investigation. I guess what I'm asking is if we determined probable cause was clearly established, are you asking us to go on to say and there was no probable cause or are you asking us to remand to the district judge to then make the determination you get to do your factual development as to whether or not there's probable cause? Well it's the latter. I don't think necessarily remand is required. I think the court could affirm because that is exactly what the district court did. The district court denied the summary judgment motion as we requested under Rule 56D in order to allow the case to proceed to discovery. So certainly at this stage all we've got are Defendant Donahue's declarations which have never been tested in discovery and are all about facts in his control. We need discovery in order to test those facts. When he says there was probable cause, I guess I'm trying to figure out what is our relationship as a reviewing court to that aspect of his denial of summary judgment? If we affirm him, are we affirming that too or not? I don't think so, Your Honor. I think the question was the district court was looking at a very partial summary judgment record and essentially decided there are questions here. Things need to move forward to discovery. I don't read the district court's decision as finding facts about the existence or non-existence of probable cause. Rather, the district court was permitting the case to proceed to discovery so that we can air these questions. Counsel, is it inescapably that, I guess to repeat the point I made earlier in a somewhat different context that question of whether there was in fact probable cause here that requires all kinds of factual development, it seems to me, that again it's premature. We actually have no jurisdiction to consider that as part of this proceeding. For your purposes, you would be happy in terms of, because he would prevail if we were to find that probable cause is the applicable standard, but there would be no basis for us in this posture of the case to go on to actually address the probable cause determination of the district court. Isn't that correct? I think that's right. If I'm understanding your question correctly, I think that's correct, that all the court needs Well, for example, the government insists that there was probable cause because of all the computer databases that were searched and they make representations about the nature of those searches. Well, those are factual assertions and to the extent that that was a reasonable reliance by an agent the reliance on those databases, that's a factual question and we cannot get into any of that here. Yeah, exactly your honor, and that's all we ask for below we ask for a chance to proceed to discovery that's what the district court did is, you know, it allowed the case to proceed to discovery so that is all we want is to be able to proceed and air those facts and as this court held in Camilo that exact question, what the officer knew and when he knew it and whether it was reasonable for him to proceed on that basis those are factual questions discovery is needed I'd just like to briefly address one final note, or rather two final notes Judge Lopez, you mentioned that the defendants use repeatedly in their briefing this phrase difficult and unique circumstances there's nothing difficult and unique about these circumstances in 2009 ICE was issuing tens of thousands of detainers every year nationally they've had policies on detainers since at least 1993 and we know in the 1980s they were issuing detainers as well and even back then they recognized probable cause as a standard so this was not an unforeseeable circumstance that the agents encountered it was not unique and we've alleged in the brief as the court has noted we've alleged in the brief that this was not a unique thing to happen to Ms. Morales she was detained twice under the policy that we've alleged of issuing detainers based on place of birth without any additional information to acquire probable cause and that she was told after she was released a second time after ICE had just confirmed her citizenship that it could happen to her again and that it happened to others in Rhode Island so this is not a difficult and unique circumstance certainly a reasonable officer would have known in 2009 that a person's place of birth alone is not a basis to put someone in jail for investigation if the court has no further questions I'll reserve the rest of my time the supervisory issue is something you do want to address or you don't want to address the supervisory issue sure yes, thank you your honor as to the supervisors you know again defendants have raised a lot of factual assertions about where the policies come from and what the contents of detainer policies were in 2009 none of that is in the complaint of course the supervisors have only a 12b6 motion and so they must respond to the allegations what is your allegation about the supervisors do you allege that it's their policy as opposed to a national policy well we've alleged that they presided over and condoned a policy or a practice we don't know whether it's written or unwritten in ICE's Rhode Island office of issuing detainers based on foreign place of birth without additional information and without probable cause and we alleged that does it matter though if that's all you've alleged that for purposes of Iqbal why isn't it relevant whether it was their policy as opposed to a national policy in other words do you have an obligation to allege that it was their policy in particular that's right your honor well their policy what we've alleged is that in ICE Rhode Island that it was common for detainers to be issued without probable cause we didn't allege what the national policy if there was one about probable cause was we don't know but what we do know is that in ICE Rhode Island detainers were issued repeatedly well I understand here's what I'm trying to figure out if because you allege the repeated anybody up the chain is responsible for that is the idea not necessarily anybody up the chain but because defendant Riccio in this particular region so in paragraphs 14 and 15 of the complaint we allege that defendant Riccio and defendant Chadburn because they were the heads of the Boston field office and the Rhode Island sub office respectively they had responsibility primary responsibility to ensure that their agents were issuing detainers based on the relevant legal standards they either knew or were deliberately indifferent to the fact that their agents were not doing that as demonstrated by Ms. Morales repeated experience and the experience of others so those are allegations I think it's more than sufficient to withstand Iqbal because unlike the cases on which defendants rely in their briefs this was not a one-off isolated act by a rogue supervisee that can't be attributed to a supervisor's own act or omission this is a repeated violation and as the court held I know I'm over my time I'll wrap up now but as the court held in Camilo Robles v. Zapata a supervisor can be liable for his own acts or omissions including condonation and tacit authorization so that's the standard for supervisory liability I think we've shown much more than that here if the court has no further questions we just ask that the court affirm thank you Your Honor Your Honor I'd like to emphasize one point the district court found on page 3 paragraph 1 it's understanding was ICE conducted the name search there was no results for the name Aiden Morales notwithstanding this finding it denied qualified immunity saying the law was clearly established it's correctly said that you look at the particular circumstances not at the high level of generality it correctly said pointed to a case where there had been a finding of qualified immunity with ICE agents who had done a name search but had there was incorrect information in the database it correctly noted that but nonetheless found the law was clearly established that agent Adahi was not entitled to qualified immunity and we would say that if you look at the steps of the court's analysis they do not lead to that conclusion they inescapably lead to the conclusion that he was entitled to qualified immunity the court did not rest its decision on there are competing facts that need to be resolved rather it said the law was clearly established that's why we're appealing it that's why we're here and even if this court disagrees and finds that the facts were disputed the correct course of action would be to vacate the district court's action and vacate and remand for further fact finding but on those particular issues as to what under the clear standard but again our view is there is no clear standard that the law was not clearly established in 2009 that is our position and that's why we're here in the absence of clearly established law the individual defendants are entitled to qualified immunity and that's why that's what we're here for and again just very quickly on the equal protection I would just add there's no dispute as to whether or not Agent Donahue considered in part the Ada Morales' birth in a foreign country but we would say that that is proper under the Walker decision and that it was not clearly if I could complete my sentence it was not clearly established that his actions were a violation of the Fifth Amendment in sum we would ask that this court reverse on the grounds that Agent Donahue is entitled to qualified immunity as a matter of law. Thank you. Thank you very briefly Your Honors Ada Morales' counsel has stated that the rule is that if there's deliberate indifference then he's not entitled to then Field Office Director Chad Vernon and Resident Agent in Charge are not entitled to qualified immunity but deliberate indifference has to be defined and this court has done so as I mentioned earlier. Manifest to any reasonable official that his conduct was very likely to violate an individual's right. I think that as the complaint is stated it doesn't make that claim it doesn't make out that point and for that reason we'd like Your Honors to reverse the decision below in favor of Field Office Director Chad Vernon and Resident Agent in Charge. Thank you.